<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **YAAKOV CINNER,** *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> **EXPERIAN INFORMATION SOLUTIONS INC.,** *et al.*, <br><br> Defendants. | Civil Action No. 23-3696 (ZNQ) (TJB) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Compel Arbitration and Stay Proceedings filed by Defendant Experian Information Solutions Inc. ("Experian" or "Defendant"). ("Motion," ECF No. 17.)  Defendant filed a Moving Brief ("Moving Br.," ECF No. 2-1) and various exhibits, including (1) a Declaration by David Williams ("Williams Decl.," ECF No. 2-2) and (2) various versions of an arbitration agreement exchanged between the parties (ECF Nos. 2-3 to 2-7).  Plaintiff Yaakov Cinner ("Plaintiff") filed an Opposition Brief ("Opp'n Br.," ECF No. 3), and Defendant filed a Reply Brief ("Reply Br.," ECF No. 4).[1]  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to

---

[1] Plaintiff also filed a Motion for Leave to File a Sur-Reply (ECF Nos. 9, 10), that Defendant opposed (ECF No. 11). That Motion was administratively terminated and never re-opened or re-filed.  Nonethless, given the lack of prejudice to Defendant, the Court will consider Plaintiff's sur-reply.

1

Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2]  For the reasons set forth below, the Court will **GRANT** the Motion.

I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed an initial class action Complaint in the Superior Court of New Jersey, Ocean County, alleging violations of the Fair Credit Reporting Act ("FCRA").  ("Compl.," ECF No. 1-1.)  Defendant removed the case to this Court on July 11, 2023.  (ECF No. 1.)  The putative class includes "[a]ll consumers residing within the United States for whom Experian reported a balance after learning that no past due balance remained, within five years of the filing of the instant action through final judgment" and "[a]ll consumers residing within the United States for whom Experian, received a dispute, and nonetheless reported a balance after learning that no past due balance remained."  (Compl. ¶ 18.)

As background, Experian is an affiliate of ConsumerInfo.com, Inc. ("CIC") and Experian Consumer Services ("ECS").[3]  (Williams Decl. ¶ 2.)  CIC, ECS, and Experian are wholly-owned subsidiaries of Experian Holdings, Inc., and the parent company, Experian plc.  (*Id.*)

In April 2014, Plaintiff opened a Capital One credit card and later became delinquent on the account.  (Compl. ¶¶ 6–7.)  On August 2, 2016, Plaintiff enrolled in CreditWorks, a credit monitoring membership with CIC.  (Williams Decl. ¶ 3; Moving Br. at 2.)  Plaintiff consented to the CreditWorks Terms of Use Agreement ("Terms of Use") when he signed up for CreditWorks.  (Williams Decl. ¶ 4; ECF No. 2-6.)  Notably, the Terms of Use contains an arbitration agreement (the "Arbitration Agreement").  (Williams Decl. ¶ 6; ECF No. 2-6.)  That Arbitration Agreement states:

> IN THE UNLIKELY EVENT THAT [EXPERIAN'S] CUSTOMER CARE DEPARTMENT IS UNABLE TO RESOLVE

---

[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[3] The Court will refer to Experian Information Solutions as "Experian" to avoid confusion with ECS.

2

> A COMPLAINT YOU MAY HAVE REGARDING A SERVICE OR WEBSITE TO YOUR SATISFACTION . . . WE EACH AGREE TO RESOLVE THOSE DISPUTES THROUGH BINDING ARBITRATION OR SMALL CLAIMS COURT INSTEAD OF IN COURTS OF GENERAL JURISDICTION TO THE FULLEST EXTENT PERMITTED BY LAW. ARBITRATION IS MORE INFORMAL THAN A LAWSUIT IN COURT. ARBITRATION USES A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY, ALLOWS FOR MORE LIMITED DISCOVERY THAN IN COURT, AND IS SUBJECT TO VERY LIMITED REVIEW BY COURTS.

(ECF No. 2-6.)  The Arbitration Agreement also states that "ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites."  (ECF No. 2-6.)  The Arbitration Agreement expressly provides that "references to 'ECS,' 'you,' and 'us' shall include our respective parent entities, subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns. . . ."  (ECF No. 2-6.)  Additionally, "[t]he term 'ECS' means ConsumerInfo.com, Inc., an Experian company (also known as Experian Consumer Services) and referred to as 'Experian' on the Websites, its predecessors in interests, successors and assigns, [and] affiliates (*including, but not limited to, Experian Information Solutions, Inc.*)."  (ECF No. 2-6 (emphasis added).)

Finally, the Arbitration Agreement covers

> claims brought by you against ECS, whether based in contract, tort, statute (including, without limitation, the Fair Credit Reporting Act and the Credit Repair Organizations Act), for fraud, misrepresentation or any other legal theory; claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.[4]

---

[4] The arbitration agreement in effect at the time Plaintiff enrolled in CreditWorks (the "Original Agreement") excluded "any dispute [between Experian and Plaintiff] arising out of the Fair Credit Reporting Act (FCRA) relating to the information contained in [Plaintiff's] consumer disclosure or report."  (ECF No. 2-5.)  That provision was amended out of the Original Agreement as reflected in the January 2019 version of the Arbitration Agreement.  (*See* ECF No.

3

(ECF No. 2-6.)

In 2019, Plaintiff and Capital One reached an agreement on payment terms and Plaintiff paid off the debt in full. (Compl. ¶ 8.) However, Defendant's records continued to report Plaintiff as having an outstanding balance. (*Id.* ¶ 9.) Plaintiff disputed the account balance and alleges that Capital One failed to conduct a reasonable investigation. (*Id.* ¶ 12.)

Plaintiff asserts two counts in the Complaint. The first is against Experian for "negligently and willfully" failing "to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported." (*Id.* ¶ 36.) The second is against Capital One for willfully and negligently supplying Experian with negative consumer report information and failing to conduct a reasonable investigation. (*Id.* ¶¶ 42, 43.) The instant Motion only involves the claim against Experian.

## II.   SUBJECT MATTER JURISDICTION

The Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

## III.   LEGAL STANDARD

"The FAA federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. . . .'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Courts are authorized to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Under Section 3 of the FAA, parties may "apply to a

---

2-6; Williams Decl. ¶ 9.) Therefore, as of January 2019, the Agreement included claims arising under the FCRA. (*Id.*) For clarity, "ECF No. 2-5" refers to the Original Agreement and "ECF No. 2-6" refers to the operative Arbitration Agreement.

4

federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3). The FAA "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

Before deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir. 2014) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). To conduct this inquiry, the court shall apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

### IV.    DISCUSSION

As a preliminary matter, when determining whether a valid arbitration agreement exists, a court must first decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The parties do not address in their papers which standard applies. For the reasons set forth below, the Court concludes that a Rule 56 summary judgment standard is appropriate.

The Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted). However,

> [w]here the complaint does not establish with clarity that the parties
> have agreed to arbitrate, or when the party opposing arbitration has

> come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record.

*Noonan v. Comcast Corp*, Civ. No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) (citations omitted). When applying the Rule 56 standard to a motion to compel arbitration, a court shall grant the motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). When utilizing the Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F.3d at 772. In the past, if the complaint and its supporting documents were unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties [were] entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question" under a Rule 56 summary judgment standard. *Id.* at 776. However, the United States Court of Appeals for the Third Circuit in *Young v. Experian Information Solutions, Inc*, recently reversed its view, and held that "[i]n the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel." 119 F.4th 314, 320 (3d Cir. 2024).

Here, the Complaint does not mention or rely upon the Arbitration Agreement; nor does Plaintiff attach the Arbitration Agreement as an exhibit to the Complaint. (*See generally* Compl.) Consequently, the Court must look to documents extraneous to the pleadings to determine whether the parties have agreed to arbitrate this dispute. Given that the question of arbitrability here cannot be resolved without considering evidence beyond the pleadings, pursuant to *Guidotti* and its

progeny, it would be inappropriate for the Court to apply a Rule 12(b)(6) standard to Defendant's motion. *See Guidotti*, 716 F.3d at 774; *Young*, 119 F.4th at 319 ("Here, the District Court correctly determined . . . that the Rule 56 summary judgment standard applies to the claims at issue because [the] Complaint ma[de] no reference to the [] arbitration agreement; it d[id] not attach the agreement as an exhibit; and it d[id] not base the claims on the existence of the agreement"); *see also Singh v. Uber Technologies Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) ("The centerpiece of [*Guidotti*'s] framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents"). Accordingly, the Court will address the instant Motion under a Rule 56 standard.

Next, the Court must determine whether an enforceable arbitration agreement exists and whether the particular dispute falls within its scope.

### A.    WHETHER A VALID ARBITRATION AGREEMENT EXISTS

Plaintiff does not dispute that he received adequate notice of the Arbitration Agreement or that he consented to arbitration.[5] Plaintiff's main argument is that there is no agreement between

---

[5] Even if notice was in dispute, the Court finds that Plaintiff had notice of the Arbitration Agreement. Here, the Arbitration Agreement was a "clickwrap" agreement, which is generally enforceable in New Jersey. *See Erasmus v. LegalZoom.com, Inc.*, Civ. No. 24-7831, 2025 WL 1122237, at *5 (D.N.J. Apr. 15, 2025) ("Contracts that require 'that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction' are sometimes called 'clickwrap' agreements."); *Santana v. SmileDirectClub, LLC*, 292 A.3d 529, 535 (N.J. App. Div. 2023) (clickwrap agreements are "routinely enforced by the courts"). Moreover, Plaintiff received adequate notice of the terms, via a clear and bold hyperlink, that was conspicuous and visible to him. (*See* Williams Decl. ¶ 3.) Specifically, Plaintiff could not successfully make a CreditWorks account unless he accepted the Terms of Use, thereby indicating his consent to the Arbitration Agreement. (*Id.*) After submitting the required personal information, Plaintiff needed to check a box that contained the following disclosure: "By clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." (*Id.*) Other district courts interpreting the same terms of use have reached a similar conclusion. *See Capps v. JPMorgan Chase Bank, N.A.*, Civ. No. 22-806, 2023 WL 3030990, at *4 (E.D. Cal. Apr. 21, 2023) (terms and use hyperlink was "conspicuously displayed" and put a reasonable user on notice); *Erasmus*, 2025 WL 1122237, at *5 (finding that a clickwrap agreement put the plaintiff on notice because the terms of service hyperlink was in clear font and conspicuously located); *Levy v. Credit Plus, Inc.*, Civ. No. 21-5541, 2023 WL 2644352, at *7 (S.D.N.Y. Mar. 27, 2023) ("Plaintiff was provided with reasonably conspicuous notice of the arbitration agreement" when she accepted and agreed to terms of use in a hyperlink); *Tadic v. Experian Info. Sols., Inc.*, Civ. No. 18-2911, 2019 WL 11499103, at *2 (N.D. Ga. Mar. 13, 2019) ("The Plaintiff is bound by the Terms and Conditions, including the agreement obligating her to arbitrate on an individual basis, her claims against ConsumerInfo.com, Inc.

Plaintiff and Experian because the Arbitration Agreement was between Plaintiff and ECS. (*See generally* Opp'n Br.) Plaintiff also argues that he disputed and rejected the modifications to the Original Agreement, i.e., when the agreement was modified to include claims arising out of the FCRA. (*Id.* at 4.) Defendant argues that the Arbitration Agreement defines ECS to include its affiliates, including Experian, (Moving Br. at 10), and that Plaintiff accepted the modifications to the Original Agreement through his continuous use of CreditWorks (Reply Br. at 5).

"Under New Jersey law,[6] '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *Levy v. AT&T Servs., Inc.*, Civ. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (alteration in original) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)). "Therefore, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" *Id.* (quoting *Crawford v. Compass Grp. USA*, Civ. No. 14-02545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015)). "To manifest assent, 'an offeree must provide unqualified acceptance, which can be express or implied by conduct.'" *Id.* (quoting *Glob. TelLink Corp*, 852 F.3d at 265).

More generally, to prove the existence of a valid contract under New Jersey law, a party must show: 1) a meeting of the minds; 2) offer and acceptance; 3) consideration; and 4) certainty in the terms of the agreement. *Big M. Inc. v. Dryden Advisory Group*, Civ. No. 08-3567, 2009 WL 1905106, at *13 (D.N.J. June 30, 2009) (citing N.J. Jury Instr. Civ. 4.10 C); *see also*

---

or its parent and affiliated entities. The Plaintiff's act of clicking on the SUBMIT SECURE ORDER button signified her acceptance of the Terms and Conditions.").

[6] Defendant relies on New Jersey law. Plaintiff cites to caselaw from various circuits, including the Third Circuit. Although the choice of law is not in dispute, the Court will apply the law of the forum state—New Jersey law. *See Adler v. Gruma Corp.*, 135 F.4th 55, 64 (3d Cir. 2025).

8

*Comprehensive Neurosurgical, P.C. v. Valley Hosp.*, 312 A.3d 243, 263 (N.J. 2024) (noting that a contract requires mutual assent and consideration, and that the parties agree on all essential terms).

The New Jersey Supreme Court in *Atalese v. U.S. Legal Services Grp.*, *L.P.*, 99 A.3d 306, 312–23 (N.J. 2014), held that an arbitration agreement is clearly enforceable when its terms affirmatively state, or unambiguously convey to a consumer in a way that he or she would understand, that there is a distinction between agreeing to resolve a dispute in arbitration and in a judicial forum." *Kernahan*, 199 A.3d at 778.  The Third Circuit has similarly held that "[b]efore a party to a lawsuit can be ordered to arbitrate . . . there should be an *express, unequivocal* agreement to that effect."  *Kirleis*, 560 F.3d at 161 (quoting *Par-Knit Mills,* 636 F.2d at 54 (alterations and emphasis in original)).  Because it is undisputed that Plaintiff had notice of the Arbitration Agreement, including that he was waiving his right to proceed in a judicial forum,[7] the Court only addresses whether the terms of the Arbitration Agreement extend to Experian.

Plaintiff argues that

> Experian's motion to compel focuses on an arbitration agreement between Plaintiff and ECS, Experian's sister corporation which is specifically limited to the conduct of ECS.  But the mere fact that Plaintiff has some contract with one of Experian's sister entities, does not mean there is a contract that is binding on this claim, brought against [Experian].  More importantly, there is simply no agreement between Plaintiff and [Experian] (or ECS for that matter) concerning FCRA claims.

(Opp'n Br. at 2–3.)

---

[7] Plaintiff does not address whether there was mutual assent to arbitration.  Nonetheless, the Court finds that the Arbitration Agreement adequately explained to Plaintiff that he was giving up his right to bring his claims in court or have a jury resolve his dispute.  The Arbitration Agreement explicitly states that the parties agree "to resolve . . . disputes through binding arbitration or small claims court *instead of in courts of general jurisdiction to the fullest extent permitted by law.  Arbitration is more informal than a lawsuit in court.  Arbitration uses a neutral arbitrator instead of a judge or jury*."  (ECF No. 2-6 (emphasis added).)  The provision clearly and unambiguously states that Plaintiff will have a neutral arbitrator resolve his disputes as opposed to a judge or jury.  The Arbitration Agreement was also conspicuous and visible to Plaintiff because it contained a heading titled "DISPUTE RESOLUTION BY BINDING ARBITRATION," and the provision regarding waiving the right to a jury trial was in all capital letters.  Accordingly, the Court finds that Plaintiff agreed to binding arbitration and there was mutual assent in that respect.

9

Plaintiff's argument is unpersuasive for several reasons. First, the Arbitration Agreement specifically states that the terms "you," "your," "we," "us," and "ECS" "have the same meaning as those terms are defined in the Overview and Acceptance of Terms section," which provides that Experian is an affiliate of ECS and therefore a party to the Arbitration Agreement. (ECF No. 2-6.) The Overview and Acceptance of Terms section of the Arbitration Agreement provides that

> [t]he term "you," "your," and "User" means a Visitor or a Customer. *The term "ECS" means ConsumerInfo.com, Inc., an Experian® company (also known as Experian Consumer Services) and referred to as "Experian" on the Websites, its predecessors in interest, successors and assigns, affiliates (including, but not limited to, Experian Information Solutions, Inc.)*, agents, employees, and any of its third party service providers (including, without limitation, cloud service providers) who ECS uses in connection with the provision of the Services to you.

(*Id.* (emphasis added).) The Arbitration Agreement's clear language thus expressly includes "Experian Information Solutions, Inc.", the Defendant here.

Second, in support of the Motion, Defendant provided an uncontested sworn affidavit by David Williams, the Vice President of Business Governance at CIC, who attests that Experian is an "affiliate of CIC/ECS," and that "CIC/ECS and [Experian] are both wholly-owned subsidiaries of Experian Holdings, Inc., and the parent company is Experian plc." (*See* Williams Decl. ¶ 2.) Accordingly, the Court finds that Experian is an affiliate of ECS and thus a party to the Arbitration Agreement.

Several district courts have reached the same conclusion when analyzing what appears to be the same terms of use agreement as that at issue here. *See Morgan v. Experian Info. Sols., Inc.*, Civ. No. 21-05783, 2022 WL 681359, at *1 (W.D. Wash. Mar. 4, 2022) ("It is undisputed that the [terms of use] applies to ECS affiliates and Plaintiff offers no cogent argument why [Experian] should not be considered one."); *Roberson v. Experian Info. Sols., Inc.*, Civ. No. 21-00316, 2022

WL 62270, at *4 (W.D. Tex. Jan. 5, 2022) ("Plaintiff agreed to arbitrate its claims against ECS, as well as its parent entities, subsidiaries, and affiliates. It is undisputed that ECS is an affiliate of Experian."); *Levy*, 2023 WL 2644352, at *6 (relying on a declaration by David Williams to find that Experian was an affiliate of ECS and a party to the terms of use agreement); *Alvarez v. Experian Info. Sols., Inc.*, Civ. No. 19-03343, 2023 WL 2519249, at *6 (E.D.N.Y. Mar. 15, 2023) (finding that the terms of use expressly define ECS to "include affiliates, which Experian was at the time Plaintiff entered into [the Arbitration Agreement]" and that the terms of use mentioned Experian over thirty times).[8]

In sum, the Court finds that there is a valid arbitration agreement between Plaintiff and Experian.

### B. WHETHER PLAINTIFF'S FCRA CLAIM IS WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT

Next, the Court must decide whether Plaintiff's FCRA claim against Experian is within the scope of the Arbitration Agreement. *Kirleis*, 560 F.3d at 160. However, before doing so, the Court must first determine whether the scope of the Arbitration Agreement should be left to an arbitrator or for the Court to resolve. Defendant argues that the issue should be decided by an arbitrator because the Arbitration Agreement states that "[a]ll issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability, [and] (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions." (ECF No. 2-6.) Plaintiff argues that the Arbitration Agreement does not "clearly and unmistakably delegate the issue" of scope to an arbitrator. (Opp'n Br. at 5.) Plaintiff also argues that the Original Agreement, which was the agreement in effect at the time Plaintiff agreed to the Terms of Use, expressly

---

[8] The Court need not address Defendant's alternative argument that Experian is a third-party beneficiary to the contract in light of its finding that Experian is a direct party to the Arbitration Agreement. (*See* Moving Br. at 11–16.)

excluded claims brought under the FCRA, and therefore his FCRA claim can be brought in this Court.  (*Id.* at 3 (relying on ECF No. 2-5).)  Lastly, Plaintiff contends that he rejected Experian's January 2019 modification of the terms of the Original Agreement, which were changed to mandate that claims arising under the FCRA proceed to arbitration.  (*Id.* at 4.)

Inasmuch as "federal law applies to the interpretation of arbitration agreements," once a court has found that there is a valid agreement to arbitrate, like here, the determination of whether "a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law."  *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) (citing *China Minmetals Materials Import and Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003)).  In determining whether a particular dispute falls within a valid arbitration agreement's scope, "there is a presumption of arbitrability" and "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Century Indem. Co.*, 584 F.3d at 524 (quoting *AT&T Techs. Inc. v. Comm'n Workers*, 475 U.S. 643, 650 (1986)).

For the reasons that follow, the Court concludes that the issue of the scope of the Arbitration Agreement should be left to an arbitrator.  Plaintiff's main argument is that the Original Agreement excluded claims arising under the FCRA.  The Original Agreement, however, was modified in January 2019 to include FCRA claims.  Additionally, although Section (g) of the Original Agreement allowed Plaintiff to "reject any such change and require ECS to adhere to the language in this provision as written at the time of your enrollment or purchase if a dispute between us arises regarding such Service," (ECF No. 2-5), both the Original Agreement and the operative Arbitration Agreement state that issues involving the scope and enforceability of the arbitration

provision are for an arbitrator. (*See* ECF No. 2-5 ("All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions") and ECF No. 2-6 ("All issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability, (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions. . . .")) Thus, it is immaterial that the Original Agreement contained a provision allowing Plaintiff to reject any modification.

Moreover, as evidenced by their language, the Original Agreement and Arbitration Agreement, clearly and unmistakably elect to have the resolution of the scope of arbitration (i.e., whether the FCRA claim is within the scope of the Arbitration Agreement) to be decided by an arbitrator. Courts interpreting the same agreement have reached a similar conclusion. *See Stephens v. Experian Info. Sols., Inc.*, 614 F. Supp. 3d 735, 743 (D. Haw. 2022) ("[T]his court concludes that the parties have clearly and unmistakably delegated the issue of arbitrability to the arbitrator."); *Solis v. Experian Info. Sols., Inc.*, Civ. No. 22-102, 2022 WL 4376077, at *2 (C.D. Cal. Sept. 21, 2022) (finding that the 2019 terms of use made "clear that the arbitrator decides 'scope' issues—i.e., which claims are subject to the agreement"); *Cimillo v. Experian Info. Sols., Inc.*, Civ. No. 21-9132, 2023 WL 2473403, at *8 (S.D.N.Y. Mar. 13, 2023) (same); *Capps*, 2023 WL 3030990, at *7 (same); *Levy*, 2023 WL 2644352, at *9 (same); *Roberson*, 2022 WL 62270, at *4 (holding that "[t]his provision constitutes a valid delegation clause delegating all questions regarding the arbitrability of the specific claims at issue to the arbitrator"); *Coulter v. Experian Info. Sols., Inc.*, Civ. No. 20-1814, 2021 WL 735726, at *4 (E.D. Pa. Feb. 25, 2021) (holding that the "[arbitration] provision constitutes a clear and unmistakable delegation clause . . . and delegates the exclusive authority to resolve 'all issues' to the arbitrator, including . . . 'scope and

13

enforceability'"); *Kisciras v. Experian Info. Sols., Inc.*, Civ. No. 23-776, 2024 WL 1713704, at *3 (D.N.J. Apr. 22, 2024) (compelling arbitration and holding that the same terms of use agreement contained a valid delegation clause); *Smith v. Experian Info. Sols., Inc.*, Civ. No. 22-06471, 2023 WL 6057377, at *3 (D.N.J. Sept. 14, 2023) ("[W]hether the arbitration clause applies to FCRA claims is an issue of scope. That issue is for the arbitrator where, as here, there is a valid delegation clause.").

Furthermore, the Arbitration Agreement expressly incorporates the Commercial Rules of the American Arbitration Association ("AAA rules"), which, absent other ambiguities as to the parties' intent, is "clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021); *Neal v. Asta Funding, Inc.*, Civ. No. 13-6981, 2016 WL 3566960, at *14 (D.N.J. June 30, 2016) ("[B]y agreeing to arbitrate in accordance with AAA rules, the parties to clearly and unmistakably agreed to arbitrate the issue of arbitrability"); *loanDepot.com v. Crosscountry Mortg., Inc.*, Civ. No. 18-12091, 2019 WL 2613265, at *5 (D.N.J. June 24, 2019); *Stephens*, 614 F. Supp. 3d at 743 (concluding that "the parties have clearly and unmistakably delegated the issue of arbitrability to the arbitrator" where the arbitration agreement contained identical delegation language and incorporated the AAA rules); *Capps*, 2023 WL 3030990, at *6 (same); *Cimillo*, 2023 WL 2473403, at *8 (same).

Accordingly, the scope of the Arbitration Agreement is for the arbitrator.

### C. WHETHER TO STAY PROCEEDINGS PENDING ARBITRATION

Finally, Defendant seeks a stay of this action pending the completion of arbitration. (Moving Br. at 17.) The Court agrees. Under Section 3 of the FAA, where an issue involved in a proceeding is referable to arbitration, the district court "shall on application of one of the parties

14

stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3. Given that the Court will grant Experian's Motion to Compel Arbitration, the Court will stay this matter pending the completion of arbitration.

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** the Motion and **STAY** the matter pending arbitration. The parties shall jointly notify the Court within one week of the issuance of the arbitrator's decision. The Clerk's Office will be instructed to stay this case. An accompanying Order will follow.

Date: August 8, 2025

                                            s/ Zahid N. Quraishi
                                            **ZAHID N. QURAISHI**
                                            **UNITED STATES DISTRICT JUDGE**